UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 18-20522-CR-ALTONAGA/GOODMAN

UNITED STATES OF AMERICA,

    Plaintiff,
v.

BRYAN DENEUMOSTIER,

    Defendant.
_____/

RESPONSE TO GOVERNMENT'S OBJECTIONS, CORRCTIONS TO
THE PSI AND SENTENCING MEMORANDUM

The defendant, Bryan Deneumostier, through undersigned counsel files this response to the government's objection to the sentencing guidelines and sentencing memorandum seeking a sentence within the guidelines range as calculated by US Probation.

**Corrections/Amendments to the PSI**

The following corrections/amendments to the PSI do not affect the guidelines calculation.

**Paragraph 82** – The PSI states that Mr. Deneumostier has scars on both wrists as a result of an accident with a mirror. Undersigned counsel recently learned that Mr. Deneumostier was ashamed to admit to the probation officer that the scars are the result not of an accident, but of a

suicide attempt. He inflicted those wounds on the day after the search warrant was served on his home.

**Paragraph 84** – states that Mr. Deneumostier has no history of mental or emotional health issues. In fact, Mr. Deneumostier has suffered from and continues to suffer from depression and anxiety and believes that he would benefit from mental health treatment.

### Sentence Recommendation

Mr. Deneumostier seeks a sentence within the sentencing guidelines and in support of this request, proffers the following information to the Court.

### Background

Mr. Deneumostier was brought to the United States in 1997 when he was 12 or 13 years old. Although he was brought here legally, he no longer has status in the United States. Mr. Deneumostier will be deported to Peru, a country he has not lived in for more than 20 years, at the conclusion of his sentence. Besides his father, who is discussed below and with whom he has had no contact since he was a child, Mr. Deneumostier has no family remaining in Peru. Consequently, he faces the prospect of rebuilding his life after his release from prison in a country he has not

lived in for many years and where he has no close friends or any family other than his father.

Mr. Deneumostier has a serious and chronic drug addiction problem. For the past four years, he has regularly used methamphetamines and Xanax. Mr. Deneumostier used these drugs to self-medicate his depression and anxiety issues. Mr. Deneumostier has never received treatment for his substance abuse issues but is eager to receive it.

Mr. Deneumostier had a very difficult early childhood. Mr. Deneumostier's father was physically abusive toward him from at least as young as three years of age until Mr. Deneumostier's mother divorced him when he was eight years old. For those five formative years, Mr. Deneumostier lived in terror of his father's violent rages and physical abuse.

Mr. Deneumostier falls in criminal history category 1 and has zero criminal history points. The only offense for which he was convicted, driving with a suspended license, occurred six years ago. He was stopped for a traffic infraction and immediately confessed to the officer that his license was expired. Although he was cited for several misdemeanors and what appear to be infractions, those cases were all dismissed. Those contacts with the system occurred between ten and thirteen years ago.

Mr. Deneumostier is very remorseful for his actions in this case. The day that the search warrant was served on his home and he reflected on what he had done, he became very distraught and ultimately attempted to commit suicide. Mr. Deneumostier is no longer suicidal but is committed to do what he can to ameliorate the damage he has done. To the extent he is able, he has tried to assist defense counsel in locating websites still providing access to the videos he recorded in an effort to remove them from the internet.

Mr. Deneumostier had a difficult childhood and has a serious substance abuse problem. Although Mr. Deneumostier has had several minor contacts with the criminal justice system, he has a single misdemeanor conviction. In addition to a significant term of imprisonment in this matter and the possibility of an additional sentence in an unrelated state matter, Mr. Deneumostier faces the certainty of being banished from the United States, the only country he has known since he was a child. Mr. Deneumostier is extremely remorseful for his actions in this case. For these reasons, the defense respectfully requests that this Court impose a sentence within the sentencing guidelines range.

### Response to the Government's PSI Objections and request for a substantial upward variance or departure.

Mr. Deneumostier placed ads on Craigslist where he listed himself as female, transsexual or male seeking other men for no-strings-attached anonymous sexual encounters in his home. Individuals responded to these ads and came to Mr. Deneumostier's home. In some instances, Mr. Deneumostier would lead these individuals to believe that he was a married woman who was willing to engage in an illicit encounter with them. These individuals would often have little or no verbal communication with Mr. Deneumostier once they arrived at his home. They would engage in a sex act and would leave with little or no words exchanged. In some instances, the sexual encounters took place through a "glory-hole."[1] In some instances, the men would sit in a chair, put on a pair of blacked-out goggles so they could not observe Mr. Deneumostier and frequently voluntarily bound their own hands or allowed Mr. Deneumostier to bind them. Mr. Deneumostier and the individual would then have a sexual encounter. As he admitted in his factual proffer, Mr. Deneumostier surreptitiously recorded many of these encounters and subsequently uploaded the videos to the internet. While there were a

---

[1] Miriam-webster.com defines glory hole as "a hole made through the partition of adjoining toilet stalls to enable homosexuals to perform fellatio anonymously." In this instance, the hole was in a bathroom door in Mr. Deneumostier's home.

5

substantial number of videos uploaded, many of the individuals came to Mr. Deneumostier's home on multiple occasions, consequently there are fewer victims than recordings. Although the website to which Mr. Deneumostier provided videos has been shut down, some of the videos were "pirated" and have appeared on other websites. Undersigned counsel has contacted several websites which still display these videos and has requested that they be removed.

## UM1 and UM2

The government refers to UM1 and UM2 as "unidentified victims – non-consensual sex with the defendant" in its request for the court to impose a sentence four to six times the sentence recommended under the sentencing guidelines and as a basis for applying a vulnerable victim enhancement to Mr. Deneumostier's sentencing guidelines. The government has not interviewed nor even identified UM1 and UM2 and consequently is speculating concerning what is taking place in the videos. In fact, UM1 and UM2 were engaged in consensual sexual activity with Mr. Deneumostier. Mr. Deneumostier and UM1 and UM2 produced the video with the intent of possibly selling it to websites that specialize in a legal fetish involving men having sex with ostensibly "unconscious" or "sleeping" men. Both UM1 and UM2 had informed Mr.Deneumostier that this was a

6

fetish that they were interested in. As an example, sleepingmen.com is a website that features such videos. The individuals who participated in the videos were willing participants. While the fetish may strike some as distasteful, it is legal and should not be a basis for an upward variance nor should it be a basis for a vulnerable victim enhancement.

## Pending State Charges

The government cites as a reason for an upward variance that Mr. Deneumostier has a pending case in state court where he has been charged with unlawful sexual activity with a specified minor. Mr. Deneumostier objects to the use of these allegations as a basis for an upward variance. The events as described by the government involve Mr. Deneumostier allegedly having consensual sex with an individual he believed to be 19. The encounter took place at a hotel and there is no allegation that the encounter was videotaped. The encounter was unrelated to the charges in this case. There is nothing to suggest that this encounter is relevant conduct in the instant case.

United States Sentencing Guideline §1B1.3(a)(1)(A) defines relevant conduct as "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant that occurred during the commission of the offense of conviction, in preparation

for that offense, or in the course of attempting to avoid detection or responsibility for that offense … ."  For offenses to qualify as relevant conduct as "part of a common scheme or plan, they must be substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar modus operandi." USSG §1B1.3 application note B(i).  To qualify as relevant conduct as part of the same course of conduct, the allegations must be "sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses."  USSG §1B1.3 application note B(ii).

Because the charges are pending in state court and because undersigned counsel does not represent Mr. Deneumostier in that matter, defense counsel is constrained regarding what can be said about the offense.  Mr. Deneumostier has entered a not guilty plea in that matter, maintains his innocence and does not waive his Fifth Amendment privilege regarding the alleged offense. Assuming for the purpose of this memorandum that the charges had been proven, the incident that forms the basis of this charge is still not relevant conduct to the instant offense. There is nothing to suggest that the incident that forms the basis of the state charges is related to the instant offense.  The alleged minor did not

8

contact Mr. Deneumostier as the result of a Craigslist ad. The alleged minor did not come to Mr. Deneumostier's home nor was the encounter videotaped. Consequently, there is nothing to suggest that the incident pending in state court meets the criteria to qualify as relevant conduct.

At the conclusion of this matter, Mr. Deneumostier will be returned to state court custody. State Circuit Court Judge Rodriguez-Fonts revoked Mr. Deneumostier's bond that matter. Should Mr. Deneumostier be convicted in the state court matter and should Judge Rodriguez-Fonts determine, based on the facts proven in that court, that an additional term of incarceration is warranted, he will have the option to impose a consecutive sentence. The more appropriate time and place for the imposition of sentence for that offense, given that the case is pending and the charges have not been proven, is before the State Court judge.

### Vulnerable victims

The government seeks an enhancement to Mr. Deneumostier's guidelines based on the vulnerable victim provision of § 3A1.1 of the sentencing guidelines. The government asserts that "Victim 4, Victim 2, UM1 and UM2 each qualify as vulnerable victims … ." The defense objects.

A vulnerable victim is "a victim of the offense of conviction ... who is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct." Id. § 3A1.1 cmt. n.2. "The vulnerability that triggers § 3A1.1 must be an 'unusual' vulnerability which is present in only some victims of that type of crime." *United States v. Birge*, 830 F.3d 1229, 1231 (11th Cir. 2016) (quoting *United States v. Davis*, 967 F.2d 516, 524 (11th Cir. 1992)).

As noted above, UM1 and UM2 were willing participants who knew they were being recorded and were not victims at all. Further, the videos involving them do not qualify as relevant conduct in the instant offense.

There is no evidence to suggest that victims 2 and 4 were "unusually vulnerable" as that term is used in the Sentencing Guidelines. Victim 2 was an adult at the time of the offense. And although victim 4 was 16, he presented himself as an adult. Mr. Deneumostier sought attractive, physically fit younger adults. He did not seek out minors and had victim 4 not convinced Mr. Deneumostier that he was an adult, Mr. Deneumostier would not have agreed to a liaison with him. Both individuals responded to a Craigslist ad and willingly participated in an anonymous sexual encounter with Mr. Deneumostier. When confronted, Mr. Deneumostier feared physical retaliation and made a threat which he did not carry out

and had no intention of carrying out. He merely feared for his safety. In short, there is no evidence to suggest that either individual had an "unusual vulnerability which is present in only some victims" of this type of crime. *Birge*, 830 F.3d at 1231. Consequently, the defense agrees with the probation officer that this enhancement should not be applied.

## Conclusion

For the reasons stated, the Defense objects to the application of a two point "vulnerable victim" enhancement, objects to the Government's motion for an upward variance and respectfully requests that the Court impose a sentence within the sentencing guidelines as calculated by US Probation.

Respectfully Submitted,

MICHAEL CARUSO
FEDERAL PUBLIC DEFENDER

BY:   *s/R. D'Arsey Houlihan*
         R. D'Arsey Houlihan
         Supervisory Assistant Federal Public Defender
         Florida Bar No. 100536
         150 W. Flagler Street, Suite 1700
         Miami, Florida 33130-1556
         (305) 530-7000
         (305) 536-4559, Fax
         E-Mail: d'arsey_houlihan@fd.org

**CERTIFICATE OF SERVICE**

I HEREBY certify that on **November 29, 2018**, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*s/R. D'Arsey Houlihan*